# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Janvier Collins

September 25, 2000

Case No. CR00001968

BY JUDGE EVERETT A. MARTIN, JR.

On March 24, 2000, at about 9:20 p.m., Janvier Collins went to the police operations center to complain that he had been robbed. He said he had been staying in room 241 of the Ramada Inn at Ocean View. (Transcript, pp. 5, 30.) He spoke to Investigator Joseph who was suspicious because the preceding day a pizza delivery driver had been robbed at the Ramada Inn and the call had been placed from room 241. (Tr., pp. 5, 31.) While he was at the police operations center, another call of a robbery at the Ramada Inn was received. (Tr., p. 5.)

Investigator Joseph determined the defendant's complaint was not a robbery, and he left the police operations center. The defendant was present when Officer Barnaby arrived at room 241 of the Ramada Inn at about 11:35 p.m. to investigate the second robbery. (Tr., pp. 59, 62.) Officer Barnaby requested and received consent to search the room, and he found a hidden pistol. (Tr., pp. 59-60.) He frisked the defendant for weapons and handcuffed him. During the frisk he found $50 in the defendant's sock. The money was dry; the defendant was sweaty. (Tr., p. 60.)

Officer Barnaby handcuffed the defendant at about 11:50 p.m. (Tr., p. 62), and Investigator Joseph placed the defendant in "investigative detention" at 11:57 p.m. (Tr., pp. 7, 32.) He was then not free to leave. (Tr., pp. 31, 36-37.) While the police had the defendant detained, a call was received of a robbery on 146 West Balview Avenue, about one-half mile from the motel. (Tr., pp. 8, 29.) Investigator Joseph testified that her purpose in detaining the

defendant was to take him to the police operations center for questioning. (Tr., p. 7.)

The defendant was taken to the police operations center for questioning, but he was not then a suspect; however, it was believed he had information about the robberies. He was first "questioned as a suspect" at 5:20 a.m. on March 25. He gave an oral statement at 6:25 a.m. and a written statement at 7:25 a.m.

Investigative detention was first explicitly authorized in *Terry* v. *Ohio*, 392 U.S. 1 (1968). As the concept has evolved, the police may briefly detain a person upon reasonable suspicion of criminal activity for questioning, investigation, and if they have a reasonable belief the person is armed, they may frisk him for weapons. Detentions have been found reasonable to allow a detective with greater knowledge of the crime to come to the suspect's location, *United States* v. *Sharpe*, 470 U.S. 675 (1985); to allow a drug dog to be brought to the suspect's location, *Limonja* v. *Commonwealth*, 8 Va. App. 532, 383 S.E.2d 476 (1989); and to take a suspect to the victim's location for a show-up. *Thomas* v. *Commonwealth*, 16 Va. App. 851, 434 S.E.2d 319 (1993). There is no maximum time limit for such a detention so long as the police act diligently. A detention of one hour at the scene for investigation was approved in *Miller* v. *Commonwealth*, 16 Va. App. 977, 434 S.E.2d 897 (1993).

I am, however, aware of no detention being found reasonable where the suspect is taken from the place he is stopped to the police station without probable cause for an arrest and held five and one-half hours for questioning. In at least three cases the U.S. Supreme Court has suppressed statements made in such circumstances. *Brown* v. *Illinois*, 422 U.S. 590 (1975); *Dunaway* v. *New York*, 442 U.S. 200 (1979); *Taylor* v. *Alabama*, 457 U.S. 687 (1982). This case is indistinguishable from them.

In each of those cases the defendant was taken by the police to the police station for questioning about a crime. At the time the police seized each defendant they did not have probable cause to arrest him. The police properly informed each defendant of his rights under *Miranda*, and the subsequent confession he made was voluntary. Nonetheless, the Supreme Court ordered the suppression of each confession because of the violation of the Fourth Amendment.

The Court held that a statement obtained under these circumstances may be used at trial only when the connection between unconstitutional police conduct and the incriminating statement has been "sufficiently attenuated." Each case held that the giving of a *Miranda* warning is not, of itself, sufficient attenuation. The issue is whether the statement was "obtained by the illegality

of his arrest," or, stated differently, whether there was a "causal connection" between the illegal arrest and the confession. See *Dunaway*, 442 U.S. at 217. The Commonwealth has the burden of proving the admissibility of the statement.

The Court stated several factors to be considered in determining the existence of a causal connection: the time that passed between the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of official misconduct. 442 U.S. at 518.

Here, considerable time passed between the defendant's arrest and confession — about five and one-half hours; however, the time in *Taylor* was six hours, and that was not held to break the causal connection. In *Taylor*, as here, the defendant was questioned during his detention and he was unrepresented. 457 U.S. at 691.

There was no sufficient intervening circumstance in this case. The defendant's brother and mother came to the police station not at the defendant's request, but because Mr. Perry had implicated the brother. The brother made no statement at the police station. The defendant's mother was taken into the interview room where the defendant was held, but nothing in the transcript indicates that she persuaded him to confess. The defendant then confessed. (Tr., pp. 10-11.) In *Taylor*, a visit by a girlfriend was held not to be a sufficient intervening circumstance. 457 U.S. at 691-92.

Lastly, the purpose of the defendant's detention was interrogation and a five and one-half hour detention can only be called flagrant. I find the Commonwealth has not proved that the causal connection between his arrest and confession was broken.

Investigator Joseph apparently did not believe she had probable cause to detain the defendant at the Ramada Inn. The Commonwealth agreed during the suppression hearing. (Tr., pp. 106-08.) On brief, the Commonwealth now claims Investigator Joseph had probable cause to arrest the defendant at the Ramada Inn. If there had been probable cause the statement would be admissible. After reviewing the transcript of the suppression hearing I must conclude that she had reasonable suspicion, not probable cause, and the motion to suppress is granted.